Texana Ford v. T. S. Ford et al.

Decided January 10, 1900.

**1. Resulting Trust—Vendor's Lien—Express Lien.**

One who invests in land money of another intrusted to him for that purpose, taking title in his own name, may, by an instrument in writing delivered and accepted, convert what would otherwise effect a resulting trust into an express vendor's lien on the land in favor of the party furnishing the money so paid.

**2. Same.**

If the written declaration of a vendor's lien in favor of the party furnishing money to pay for land deeded to another could not create a technical vendor's lien, it would still constitute an express contract lien capable of enforcement.

**3. Vendor's Lien—Payment—Subrogation.**

One furnishing money to pay off vendor's lien notes given by another on purchase of land, may be subrogated to the vendor's lien and right of foreclosure.

APPEAL from McLennan. Tried below before Hon. MARSHALL SURRATT.

*James D. Williamson*, for appellant.

*W. M. Flournoy* and *John L. Dyer*, for appellees.

COLLARD, ASSOCIATE JUSTICE.—The appellant, Texana Ford, sued appellee, T. S. Ford, for title and partition of one-half of 35¼ acres of land in McLennan County, upon the ground that it was purchased by T. S. Ford while they were man and wife; that after the purchase they were divorced, but that no disposition was made of the land in that suit.

Appellee answered by demurrer and general denial, and specially, admitting that the land was purchased during his coverture with plaintiff, but it was purchased with $500 loaned him by E. C. Lilly to invest in land for her, he taking the deed in his own name.

Emily Ford intervened, alleging that she was formerly Emily Lilly, but now the wife of T. S. Ford; that she advanced $500 to T. S. Ford before his marriage with her to buy land in McLennan County, taking his receipt for the same and prior to his marriage with appellant; that after he and appellant were married, he bought the land in suit from W. W. Kendall with the money and gave her a vendor's lien on the property; prayer for foreclosure of the lien against T. S. Ford and for judgment against plaintiff.

The case was tried without a jury and the court rendered judgment against plaintiff and in favor of intervener E. C. Ford against T. S. Ford for $852.65, foreclosing lien on the land, directing sale to satisfy the judgment, providing that if the land sold for more than enough to satisfy the judgment, the excess should be divided between appellant and T. S. Ford, from which Texana Ford, plaintiff below, has appealed.

We find the facts as follows: The deed to the land in suit was made by W. W. Kendall, attorney in fact for the owner of the land, to T. S.

Ford, September 23, 1893, reciting cash consideration of $176.25, and two deferred payments of one and two years, of $176.25 each, bearing 10 per cent interest from date, retaining vendor's lien evidenced by T. S. Ford's notes of even date with the deed.

T. S. Ford and the plaintiff, Texana, were married January 25, 1892, and they were divorced July 10, 1895, by decree of the District Court of Bastrop County, after which he was married to E. C. Lilly, the intervener. He purchased the land on which the foreclosure is sought from Kendall, agent, on the 23d of September, 1893, during his coverture with plaintiff. The cash payment was paid out of the $500 he had received from E. C. Lilly, and he paid the balance of the $500 on the two notes. He received from E. C. Lilly $500 before his marriage, when both were single, on the 25th day of August, 1891, as evidenced by his testimony and receipt of that date as follows: "Received from Miss E. C. Lilly, five hundred dollars to be invested in land located in McLennan County; money drawing 6 per cent interest from date." This receipt is witnessed by Letha Johnson, she signing by "her mark."

Ford also executed the following instrument:

"Waco, Texas, Sept. 22, 1893.

"This is to certify that the five hundred dollars that I borrowed from Miss E. C. Lilly, August 25, 1891, to purchase land, has been invested as promised. Under my present condition, I give Miss E. C. Lilly a vendor's lien on the 35¼ acres of land just bought from Mr. Kendall, agent for J. C. League land.

(Signed)     "T. S. Ford.

"Witness:  Letha Johnson, her X mark."

The receipt and the lien are both on the same kind of old paper, the original of which was sent up in the statement of facts, and appellant contends that they were both executed at the same time and do not speak the truth; but we find, as the court below must have done, that they speak the truth, and were executed at the time of their respective dates.

The proof shows that the lien was given on the land Ford bought from Kendall, agent, the land on which the foreclosure is sought in this suit by the intervener. The receipt for the money draws interest, but the facts show that it was not a loan, and the intention of the parties was to invest it in land for E. C. Lilly. Part of it was so used, but the greater part was used to take up the vendor lien notes to Kendall. A lien was given to secure the money by contract of the parties. The receipt styles it a vendor's lien.

*Opinion.*—1. Appellant contends that the instrument of date September 22, 1893, was not a vendor's lien, because the facts did not show such lien. The facts show that the money of E. C. Lilly was used to make the first payment on the land, and that the rest of the $500 be-

longing to her was paid on the vendor's lien notes. All the $500 was used in payment on the land. While the first payment, without agreement would be treated as securing to Lilly a resulting trust for that amount in the land, the parties could, by agreement, treat it as a vendor's lien and contract to that effect. This was done by them, and it must have that effect. If it had not in fact been used in the purchase of the land, a resulting trust would not arise, nor could it become a vendor's lien, even though the parties contracted for such lien; but as it did all of it enter as part consideration into the purchase of the land, the parties could, by agreement, declare it a vendor's lien, and there was no error in holding that such lien existed. In any event, it was a lien—a contract lien, and if so, there was no error in the foreclosure to pay it. A lien was intended by the agreement, and though the parties might have miscalled it, yet it must be held to be a lien upon the land. The result of foreclosure would be the same in both cases as to the parties to this suit.

2. When the money of intervener, Lilly, was used to pay off and take up in part the two vendor's lien notes executed by Ford in the original purchase of the land, she was subrogated to the rights of the vendor, and was invested with the same rights to foreclose on the land to pay the amount due her so invested. Hicks v. Morris, 57 Texas, 658; Pridgen v. Warn, 79 Texas, 594.

3. The evidence supports the finding that the two instruments executed by Ford to E. C. Lilly were executed as of their respective dates, and represent genuine and not fraudulent transactions.

We find no error in the judgment of the court below, and it is affirmed.

*Affirmed.*

Writ of error refused.